**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| OMAN ALUMINIUM ROLLING COMPANY SPC, | : |
| Plaintiff, | : |
| and | : |
| DAIKIN COMFORT TECHNOLOGIES NORTH AMERICA, INC. | : |
| Plaintiff-Intervenor, | : |
| v. | :  Court No. 25-00215 |
| UNITED STATES, | : |
| Defendant, | : |
| and | : |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP et al., | : |
| Defendant-Intervenors. | : |

**PLAINTIFF-INTERVENOR'S RULE 56.2 MOTION
FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the U.S. Court of International Trade, Plaintiff-Intervenor Daikin

Comfort Technologies North America, Inc. ("Daikin") hereby moves for judgment on the agency

record with regard to the final results of the U.S. Department of Commerce ("Commerce") in the

administrative review of the antidumping duty order covering imports of certain aluminum foil

from the Sultanate of Oman made during the period November 1, 2022, through October 31,

2023.  *See Certain Aluminum Foil From the Sultanate of Oman: Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90 Fed. Reg. 44,162 (Sept. 12, 2025) ("*Final Results*").

For the reasons set forth in the attached Memorandum in support of Daikin's Motion, Commerce's *Final Results* are not supported by substantial evidence on the record and are otherwise not in accordance with law.  Daikin moves this Court to so hold, to declare the *Final Results* unlawful, to remand this case to Commerce for recalculation of the antidumping duty rate assigned to Daikin's entries in the *Final Results*, and to grant such other relief as may be just and proper.

Respectfully submitted,

/s/ Daniel R. Wilson

Daniel R. Wilson
Carrie Bethea Connolly
Richard P. Ferrin
Morgan Alexis Howard
FAEGRE DRINKER BIDDLE & REATH LLP
1501 K Street, NW
Washington, D.C. 20005
Daniel.Wilson@faegredrinker.com

*Counsel for Plaintiff-Intervenor*

Dated:  April 8, 2026

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| OMAN ALUMINIUM ROLLING COMPANY SPC, | : |
| Plaintiff, | : |
| and | : |
| DAIKIN COMFORT TECHNOLOGIES NORTH AMERICA, INC., | : |
| Plaintiff-Intervenor, | : |
| v. | : Court No. 25-00215 |
| UNITED STATES, | : |
| Defendant, | : |
| and | : |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP et al., | : |
| Defendant-Intervenors. | : |

## <u>PROPOSED ORDER</u>

Upon consideration of the Rule 56.2 Motion for Judgment on the Agency Record of Plaintiff-Intervenor Daikin Comfort Technologies North America, Inc., and the supporting Memorandum of Law, responses thereto, and all other papers filed in the above-captioned action, it is hereby

**ORDERED** that Plaintiff-Intervenor's Motion is **GRANTED**;

**ORDERED** that the final results of the 2022-2023 administrative review of the U.S. Department of Commerce ("Commerce") in *Certain Aluminum Foil From the Sultanate of Oman:*

*Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90 Fed. Reg. 44,162 (Sept. 12, 2025) are remanded to Commerce for further proceedings for the agency to reconsider the calculation of the antidumping duty margin for Plaintiff Oman Aluminium Rolling Company SPC.

Dated: _____          _____

New York, NY                                    Jennifer Choe-Grovers, Judge

2

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| OMAN ALUMINIUM ROLLING COMPANY SPC, | : <br> : <br> : |
| Plaintiff, | : <br> : |
| and | : <br> : |
| DAIKIN COMFORT TECHNOLOGIES NORTH AMERICA, INC. | : <br> : <br> : |
| Plaintiff-Intervenor, | : <br> : |
| v. | :     Court No. 25-00215 |
| UNITED STATES, | : <br> : |
| Defendant, | : <br> : |
| and | : <br> : |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP et al., | : <br> : <br> : |
| Defendant-Intervenors. | : <br> : |

## PLAINTIFF-INTERVENOR'S MEMORANDUM IN SUPPORT OF ITS RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

**TABLE OF CONTENTS**

**PAGE**

I.     STATEMENT PURSUANT TO RULE 56.2 ................................................................1

     A.    Administrative Determination Under Review ..........................................1

     B.    Issues Presented for Review ....................................................................1

II.    STATEMENT OF FACTS ....................................................................................2

III.   SUMMARY OF ARGUMENT..............................................................................6

IV.   STANDARD OF REVIEW ...................................................................................8

V.    ARGUMENT.........................................................................................................8

     A.    Commerce Unlawfully Applied Facts Available to OARC in this Review .............8

     B.    Commerce's Application of AFA to OARC Is Unsupported By Substantial Evidence Because OARC Did Not Fail To Cooperate to the Best of its Ability ...............................................................................................13

VI.   CONCLUSION...................................................................................................17

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Albemarle Corp. v. United States*
 821 F.3d 1345 (Fed. Cir. 2016)........................................................................................15

*Böwe-Passat v. United States*
 17 CIT 335 (1993) .................................................................................................11, 15

*Consol. Edison Co. v. NLRB*
 305 U.S. 197 (1938)............................................................................................................8

*Duncan v. Walker*
 533 U.S. 167 (2001)..........................................................................................................10

*Essar Steel Ltd. v. United States*
 678 F.3d 1268 (Fed. Cir. 2012)........................................................................................13

*Hyundai Heavy Indus. v. United States*
 44 CIT ___, 485 F. Supp. 3d 1380 (2020)................................................................12, 13

*Hyundai Steel Co. v. United States*
 45 CIT ___, 518 F. Supp. 3d 1309 (2021)......................................................................11

*Loper Bright Enters. v. Raimondo*
 603 U.S. 369 (2024)............................................................................................................8

*Nippon Steel Corp. v. United States*
 458 F.3d 1345 (Fed. Cir. 2006)...............................................................................8, 13, 14

*NSK Ltd. v. United States*
 481 F.3d 1355 (Fed. Cir. 2007) .......................................................................................14

*Shandong Huarong Mach. Co. v. United States*
 30 CIT 1269, 435 F. Supp. 2d 1261 (2006).....................................................................14

*Ta Chen Stainless Steel Pipe Ltd. v. United States*
 23 CIT 804 (1999) ..............................................................................................................9

*Universal Camera Corp. v. NLRB*
 340 U.S. 474 (1951)............................................................................................................8

*Usinor Sacilor v. United States*
 19 CIT 711, 893 F. Supp. 1112 (1995).............................................................................11

*Yama Ribbons and Bows Co. v. United States*
 36 CIT 1250, 865 F. Supp. 2d 1294 (2012)........................................................................8

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*
    716 F.3d 1295 (Fed. Cir. 2013)........................................................................15

*Zhejiang Dunan Hetian Metal Co. v. United States*
    652 F.3d 1333 (Fed. Cir. 2011)..........................................................................9

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)...............................................................................8

19 U.S.C. § 1677e(a).............................................................................1, 9, 10, 11

19 U.S.C. § 1677e(b) ................................................................................. *passim*

19 U.S.C. § 1677m(d) ................................................................................ *passim*

iii

## I.    STATEMENT PURSUANT TO RULE 56.2

### A.  Administrative Determination Under Review

Plaintiff-Intervenor Daikin Comfort Technologies North America, Inc. ("Daikin"), an importer of subject aluminum fin stock from Oman, seeks judicial review of the final results of the U.S. Department of Commerce ("Commerce") in the administrative review of the antidumping duty order on certain aluminum foil from the Sultanate of Oman, covering the period November 1, 2022 through October 31, 2023 (the "period of review" or "POR").  *See Certain Aluminum Foil From the Sultanate of Oman:  Final Results of Antidumping Duty Administrative Review; 2022-2023*, 90 Fed. Reg. 44,162 (Sept. 12, 2025) ("*Final Results*") and accompanying Issues and Decision Memorandum ("IDM").

As discussed below, the legal and factual errors in Commerce's *Final Results* have resulted in a significantly overstated and unduly punitive antidumping duty margin for Daikin's entries of subject merchandise made during the POR.  Daikin therefore requests that the Court remand the *Final Results* to Commerce with instructions to recalculate the antidumping duty rate applicable to Daikin's entries in a manner that is supported by substantial evidence and in accordance with law.

### B.  Issues Presented for Review

1.    Whether Commerce erred as a matter of law by adjusting Plaintiff Oman Aluminium Rolling Company SPC's ("OARC") reporting of certain expenses and service revenue pursuant to 19 U.S.C. § 1677e(a) without promptly notifying OARC of perceived deficiencies and providing an opportunity to remedy them, as required by 19 U.S.C. § 1677m(d).

2.    Whether Commerce erred as a matter of fact in applying an adverse inference to the facts otherwise available without a reasonable finding that OARC failed to cooperate by not

1

acting to the best of its ability to comply with a request for information, as required by 19 U.S.C. § 1677e(b).

## II.    STATEMENT OF FACTS

Daikin is one of the largest manufacturers of Heating, Ventilation, and Air Conditioning ("HVAC") products in the United States.  *See* Daikin Ministerial Error Submission (Sept. 15, 2025) at 1, P.R. 125.  Due to a domestic shortage of fin stock supply during the POR, Daikin, of necessity, imported subject fin stock from Oman that was produced and exported by OARC for Daikin's domestic HVAC manufacturing operations.  *See id.*  OARC's sales of fin stock to Daikin were subject to the instant administrative review at the request of Defendant-Intervenors Aluminum Association Trade Enforcement Working Group and its individual members, Gränges America, Inc., JW Aluminum Company, and Novelis Corporation.  *See* Def.-Int. Req. Admin Rev. (Nov. 30, 2023), P.R. 2.

OARC was the sole mandatory respondent subject to the review and was issued Commerce's initial antidumping duty questionnaire on March 25, 2024.  *See* P.R. 12.  On April 26, 2024, OARC timely submitted a complete response to Section A of Commerce's Initial Questionnaire.  *See* P.R. 19, C.R. 3.  The Section A Response included, at Exhibit A-8, sales trace documents for a sample U.S. sale, as requested by Commerce.  *See id.*, C.R. 4.  On May 15, 2024, OARC timely submitted its response to Section C of the Initial Questionnaire.  *See* P.R. 32, C.R. 37.  In its Section C response, OARC explained its reporting of movement expenses, as required by the questionnaire's instructions.  *See id.* at C-21 to C-29.

On June 10, 2024, Defendant-Intervenors filed comments on OARC's Section C Response.  *See* P.R. 42, C.R. 51.  Defendant-Intervenors suggested that OARC did not properly report transaction-specific movement expenses and suggested that Commerce issue a supplemental questionnaire to clarify OARC's reporting.  *See id.* at 11-13.

During the course of the administrative review, Commerce issued supplemental questionnaires seeking additional information and clarification from OARC on other aspects of OARC's initial questionnaire response. *See*, *e.g.*, First Supp. Questionnaire (June 5, 2024), P.R. 40, C.R. 50; Second Supp. Questionnaire (Oct. 1, 2024), P.R. 52, C.R. 59; Third Supp. Questionnaire (Oct. 10, 2024), P.R. 77. However, Commerce, provided no notification to OARC in any of these supplemental questionnaires that it agreed with Defendant-Intervenors' claims regarding alleged deficiencies in OARC's reporting of movement expenses.

On November 12, 2024, Defendant-Intervenors filed additional comments in advance of Commerce's preliminary results. P.R. 82, C.R. 66. Defendant-Intervenors again raised the issue of alleged deficiencies in OARC's reported movement expenses. *See id.* at 29-34. OARC submitted rebuttal comments on November 21, arguing that Defendant-Intervenor's allegations were misplaced. P.R. 84, C.R. 67. Commerce again issued no supplemental questionnaire on this issue and provided no notification to OARC that it perceived a deficiency in OARC's reporting of movement expenses.

On December 6, 2024, Commerce issued its preliminary results, calculating a preliminary weighted-average dumping margin of 5.84 percent. *See Certain Aluminum Foil From the Sultanate of Oman: Preliminary Results of Antidumping Duty Administrative Review: 2022-2023*, 89 Fed. Reg. 100,976 (Dec. 13, 2024) ("*Preliminary Results*") and accompanying Issues and Decision Memorandum ("PDM"). The *Preliminary Results* made no mention of alleged deficiencies in OARC's reporting of movement expenses, nor did Commerce find that OARC failed to report freight service revenue. Commerce also did not make any finding in the *Preliminary Results* that any of OARC's reporting created gaps in the record. Commerce also did not find that OARC failed to cooperate to the best of its ability. Commerce set a deadline for

3

affirmative case briefs of 30 days after the date of publication of the *Preliminary Results*. *See* 89 Fed. Reg. at 100,976.

Defendant-Intervenors, on January 7, 2025, requested that Commerce extend the briefing schedule and issue a supplemental questionnaire to OARC to collect additional information regarding OARC's reporting of movement expenses and alleged failure to report freight service revenue based on line items contained in the commercial invoice provided in OARC's Section A response. P.R. 96, C.R. 74.

On January 10, 2025, Commerce issued a memorandum suspending the briefing schedule "to evaluate the record and comments submitted to determine whether to issue a further supplemental questionnaire." P.R. 97. Commerce did not indicate in its January 10 memorandum that it considered OARC's prior reporting to be deficient.

On January 10, 2025, OARC submitted a letter objecting to Commerce's suspension of the briefing schedule. P.R. 98, C.R. 75. In its January 10 letter, OARC, using information already on the record, tied the documentation cited in Defendant-Intervenor's comments to OARC's reported freight expenses to demonstrate that such expenses were in fact reported on a transaction-specific basis. *See id.* at 4-5 and Attachment I. OARC also explained that the line items on its commercial invoice provided in its Section A response did not reflect separately negotiated freight revenue. *See id.*

On February 12, 2025, Defendant-Intervenors requested that Commerce reject OARC's January 10 rebuttal letter. P.R. 102, C.R. 79. On April 23, 2025, Commerce found that the analysis of extant record information in OARC's January 10 submission constituted untimely new factual information but nonetheless accepted it on the record of the review. P.R. 104. In its April 23 memorandum, Commerce claimed that, at the time that OARC filed its January 10

4

letter, Commerce was "considering requesting information relating to the allocation of OARC's freight expenses." *See id.* at 1. However, Commerce again made no indication in the April 23 memorandum that it considered OARC's initial reporting or subsequent explanations to be deficient or reflective of any failure of OARC to cooperate to the best of its ability in the administrative review.

On April 30, 2025, Defendant-Intervenors submitted an administrative case brief to Commerce. P.R. 107, C.R. 80. Defendant-Intervenors argued, *inter alia*, that Commerce should resort to adverse facts available ("AFA") in light of the issues it had previously raised to Commerce concerning OARC's reporting of movement expenses and alleged service revenues associated with those expenses. *See id.* at 6-21. On May 5, 2025, OARC submitted a rebuttal brief responding to Defendant-Intervenors' arguments. P.R. 109, C.R. 82. Specifically, OARC argued that the record provided no basis for Commerce to conclude that OARC did not cooperate to the best of its ability, and that AFA was not warranted. *See id.* at 4-14. While OARC defended its prior reporting, OARC further emphasized that Commerce "has not notified OARC of any deficiency in its reporting of movement expenses or freight revenue, and it has not issued any supplemental questionnaires on this aspect of OARC's reporting to which OARC has not responded." *Id.* at 14.

Commerce issued the *Final Results* on September 8, 2025. *See* 90 Fed. Reg. at 44,162. In the *Final Results*, Commerce notified OARC for the first time that it perceived its reporting of domestic inland freight expenses, international freight expenses, U.S. inland freight expenses, and U.S. customs duty expenses to be deficient. *See* IDM at 4-5. Commerce did not address in its IDM OARC's arguments regarding the agency's responsibility, pursuant to 19 U.S.C. § 1677m(d), to provide a respondent prompt notification of a deficiency in its reporting and an

opportunity to remedy or explain said perceived deficiency.  Commerce also failed to acknowledge the extended back-and-forth between OARC and Defendant-Intervenors on this issue throughout the review and instead claimed that it was not until OARC's Jan 10 rebuttal letter that Commerce was put on notice of any alleged deficiency.  *See id*. at 7.

As a result of these alleged deficiencies, Commerce claimed that OARC failed to cooperate to the best of its ability in the administrative review and applied partial AFA to OARC's reporting of movement expenses and allegedly unreported freight revenue.  *See id*. at 8, 11.  Commerce's application of partial AFA resulted in a final weighted-average dumping margin of 42.48 percent.  *See Final Results*, 90 Fed. Reg. at 44,162.

On September 15, 2025. OARC submitted a letter for the record objecting to Commerce's application of partial AFA and alleging certain ministerial errors in response to the partial AFA adjustments made.  P.R. 124, C.R. 94.  Also on September 15, Daikin submitted comments for the record in support of OARC's objection.  P.R. 125.  In its letter, Daikin explained that Commerce's failure to promptly notify OARC of perceived deficiencies and provide an opportunity to remedy them amounted to a procedural blindside that would have severe negative impacts for Daikin and its domestic manufacturing of HVAC products.

Commerce declined to reconsider its application of partial AFA to OARC.  This action ensued.

## III.    SUMMARY OF ARGUMENT

In this review, Commerce rejected OARC's reporting and assigned an unduly punitive AFA rate because Commerce identified, for the first time in the *Final Results*, what it alleged to be reporting errors that were contained in OARC's initial submissions to the agency.  Despite ample time to do so, Commerce gave OARC no prompt notification that it perceived any deficiency in OARC's reporting of movement expenses or service revenues until the *Final*

6

*Results*.  The failure to provide prompt notification of a perceived deficiency in these circumstances constituted a clear violation of 19 U.S.C. § 1677m(d).  More egregiously, Commerce gave OARC no opportunity to modify its reporting prior to issuing a tardy notification in the *Final Results* that it perceived these issues to be deficiencies indicative of an alleged failure of OARC to cooperate to the best of its ability.  Commerce further provided no indication that it was not practicable to do so, nor could it have in light of the significant time remaining in the review, constituting a second clear violation of 19 U.S.C. § 1677m(d).  Instead of abiding by the statute's clear requirements that the agency provide prompt notice of perceived deficiencies and, where practicable, an opportunity to remedy, Commerce unlawfully declared OARC to be uncooperative because OARC did not concede that it committed any reporting errors and defended of its reporting in response to comments from Defendant-Intervenors.

In light of the foregoing, Commerce's application of AFA to OARC in this review constitutes a blatant disregard of the procedural requirements of prompt notification and opportunity to remedy codified in 19 U.S.C. § 1677m(d).  The Court has long recognized that Commerce's discretion to disregard a cooperative respondent's reporting and resort to AFA is not unbounded.  Commerce is not at liberty to refuse to conduct further fact finding necessary to substantiate its suspicions where, as here, a respondent has demonstrated cooperation that satisfies both the subjective and objective components of the statute's requirements that a respondent cooperate to the best of its ability.  Commerce's assessment of a punitive margin with no grounding in the law has real-world consequences for Daikin and its U.S. HVAC manufacturing operations.

7

As further discussed below, Daikin respectfully requests that this Court remand this matter to Commerce with instructions to calculate a margin in a manner that is consistent with the statute, the record evidence, and basic principles of procedural fairness.

## IV.   STANDARD OF REVIEW

The Court will hold Commerce's determinations unlawful in an antidumping duty proceeding where they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

"To be in accordance with law, the agency's decision must be authorized by the statute, and consistent with the agency's regulations."  *Yama Ribbons and Bows Co. v. United States*, 36 CIT 1250, 1253, 865 F. Supp. 2d 1294, 1253 (2012) (citation omitted).  The Court must determine the "best" interpretation of the statute by applying "the traditional rules of statutory construction."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024).

Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229-30 (1938).  Importantly, "{t}he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  The substantial evidence standard of review essentially asks whether, given the evidence on the record as a whole, the agency's conclusion was reasonable. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

## V.   ARGUMENT

### A.  Commerce Unlawfully Applied Facts Available to OARC in this Review

As an initial matter, Daikin agrees with and adopts herein by reference the affirmative arguments of OARC regarding its compliance with Commerce's instructions in the initial questionnaire.  However, even assuming for the sake of argument that OARC's initial reporting

8

contained deficiencies, Commerce acted unlawfully in resorting to facts available without satisfying the prompt notification and opportunity to remedy requirements of 19 U.S.C. § 1677m(d), on which the statute expressly conditions the agency's authority.  *See* 19 U.S.C. § 1677e(a) (providing that authority to resort to "the facts otherwise available" is "subject to section 1677m(d) of this title").  Hence, Commerce's use of facts available, and the subsequent application of an adverse inference in selecting from among those facts, cannot stand.

Commerce's authority to resort to AFA lies in two distinct provisions of the statute, 19 U.S.C. § 1677e(a) and 19 U.S.C. § 1677e(b), which together grant Commerce the authority, where appropriate, to apply an adverse inference when selecting from the facts otherwise available.  Section 1677e(a) provides that Commerce may, in certain situations, use facts otherwise available to fill gaps in the record where necessary information is lacking.  Where Commerce correctly makes that threshold factual conclusion, Commerce may consider whether 19 U.S.C. § 1677e(b), which provides that Commerce may use an adverse inference in selecting from the facts available, applies.  Read properly, these two provisions of the statute require that Commerce must correctly determine whether a respondent's reporting warrants the use of facts available due to a gap in the record before reaching the secondary question of whether an adverse inference may be applied to select which facts to use.  *See id.* § 1677e(a)-(b); *Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1346 (Fed. Cir. 2011).

However, before recourse to the use of facts otherwise available under 19 U.S.C. § 1677e(a), Commerce must first fulfill its "statutory obligation to provide respondents with a chance to remedy deficient submissions."  *Ta Chen Stainless Steel Pipe Ltd. v. United States*, 23 CIT 804, 819 (1999), *aff'd following remand*, 298 F.3d 1330, 1338 (Fed. Cir. 2002).  This means that Commerce must notify a respondent promptly that its response to a request for information

was deficient.  Section 1677e(a), accordingly, conditions Commerce's authority to apply facts

available upon Commerce following the notification procedures established by statute in Section

1677m(d).  Section 1677m(d) provides, in relevant part:

> If {Commerce} determines that a response to a request for information {in an investigation or administrative review} does not comply with the request, {Commerce} *shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency* in light of the time limits established for the completion of investigations or reviews under this subtitle.

19 U.S.C. § 1677m(d) (emphasis added).  Again, this statutory scheme establishes that

Commerce cannot lawfully use facts available without first "promptly inform{ing}" the party of

the apparent deficiency and, if practicable, providing an opportunity to cure or explain.

Importantly, the "to the extent practicable" qualifier in 19 U.S.C. § 1677m(d) applies

only to the opportunity to remedy or explain; the notification requirement is unqualified.

Congress's intent to limit Commerce's authority to apply facts available through this explicit

statutory language must be given effect.  *See Duncan v. Walker*, 533 U.S. 167, 174 (2001)

(explaining that a "cardinal principle of statutory construction" requires court "to give effect, if

possible, to every clause and word of a statute") (cleaned up).  Throughout the antidumping duty

statute, Commerce is granted broad authority to conduct investigations and reviews.  The explicit

limitations, like the prompt notification and opportunity to remedy or explain requirements in

Section 1677m(d), are therefore significant.  Commerce cannot ignore this provision when

convenient, as it did here.

Commerce's actions in this case directly contradict the plain language of the statute and

this Court's, and the Federal Circuit's, longstanding interpretation of the statutory framework

described above.  The Court has held that the statutory framework governing Commerce's AFA

determinations does not permit the agency to find AFA is warranted based on narrow grounds following general requests for information:

> {The Court will not endorse} an investigation where {Commerce} sent out a general questionnaire and a brief deficiency letter, then effectively retreated into its bureaucratic shell, poised to penalize {respondent} for deficiencies not specified in the letter that {Commerce} would only disclose after it was too late, i.e., after the preliminary determination.

*Böwe-Passat v. United States*, 17 CIT 335, 343 (1993); *see also Hyundai Steel Co. v. United States*, 45 CIT ___, ___, 518 F. Supp. 3d 1309, 1322 (2021) (quoting *Böwe-Passat*), *aff'd following remand*, 2022 WL 3273811 (Fed. Cir. Aug. 11, 2022). The Court has also held that broad questions asked of a respondent in an original questionnaire do not "discharge {Commerce} from its obligations to put parties on notice as to the deficiencies in their responses," and that "failure to provide {respondents} with notice pertaining to the absence of {specific, necessary} information . . . deprived plaintiffs of their right to participation in the {proceedings} below{.}" *Usinor Sacilor v. United States*, 19 CIT 711, 745, 893 F. Supp. 1112, 1141 (1995), *aff'd in part, rev'd in part following remand*, 1999 WL 641231 (Fed. Cir. Aug. 24, 1999).

By identifying the agency's position on perceived deficiencies only in the *Final Results*, Commerce sidestepped the prompt notification requirement of 19 U.S.C. § 1677m(d). In so doing, Commerce exceeded its statutory authority under 19 U.S.C. § 1677e(a). Commerce provided OARC with no notice of any perceived deficiency or opportunity to explain or remedy such perceived deficiency. Despite being informed of Defendant-Intervenor's objections to OARC's reporting since the very outset of the review, Commerce provided no indication to OARC that it agreed with Defendant-Intervenor's assertions and issued no supplemental questionnaires on these issues.

Put simply, Commerce cannot reasonably claim that it promptly notified OARC of any perceived deficiencies related to OARC's reporting of movement expenses or service revenues. Instead, Commerce remained silent until the *Final Results* despite repeated requests by Defendant-Intervenors that Commerce require OARC to modify its reporting.

Moreover, it is of no moment that OARC registered its disagreement with Defendant-Intervenor's interpretation of the record. Even assuming *arguendo* that OARC's reporting was somehow deficient, Commerce here "provides no basis for finding that it was not practicable to have provided the respondent an opportunity to remedy or explain the deficiency." *Hyundai Heavy Indus. v. United States*, 44 CIT ___, ___, 485 F. Supp. 3d 1380, 1392 (2020), *aff'd following remand sub nom. Hyundai Elec. & Energy Sys. v. United States*, 2022 WL 3273811 (Fed. Cir. Aug. 11, 2022). Remand is appropriate, where, as here, "Commerce did not provide any other explanation supporting its failure to issue a supplemental questionnaire." *Id.* This is particularly true where, as here, Commerce was well aware of the disagreement between Defendant-Intervenors and OARC regarding the nature of its reporting of both movement expenses and service revenues. *See id.*

Indeed, Commerce's conduct in this proceeding is arguably more egregious than it was in the facts giving rise to *Hyundai Heavy Industries*. There, the Court found that Commerce's failure to promptly state that it disagreed with the respondent's reporting and issue a supplemental questionnaire violated 19 U.S.C. § 1677m(d) where "Commerce received the deficient response two months before the *Preliminary Results* and the agency provide{d} no basis for finding that it was not practicable to have provided the respondent an opportunity to remedy or explain the deficiency." *Id.* Here, by contrast, Commerce was fully aware of the issues raised by Defendant-Intervenors and its repeated requests that Commerce issue OARC a

12

supplemental questionnaire to modify its initial reporting after OARC submitted its initial questionnaire responses.  As noted in the Statement of Facts, *supra* Section II, Defendant-Intervenors first raised these issued on June 10, 2024, nearly *15 months* before Commerce issued its final results on September 8, 2025.

Commerce did not promptly notify OARC that it agreed with Defendant-Intervenors' arguments particularly in light of OARC's arguments to the contrary, regardless of whether they were accepted by Commerce.  Nor did Commerce provide OARC with an opportunity to remedy any perceived deficiency, even though it clearly was practicable to do so prior to the *Final Results*.  Accordingly, even if the Court were to find that OARC's reporting was deficient in any way, the Court must find here, as it did in *Hyundai Heavy Industries*, that "Commerce's determination to rely on the facts otherwise available is not in accordance with law because Commerce did not comply with 19 U.S.C. § 1677m(d)."  *Id.*

**B.  Commerce's Application of AFA to OARC Is Unsupported By Substantial Evidence Because OARC Did Not Fail To Cooperate to the Best of its Ability**

Commerce's application of AFA to OARC in this review is unsupported by substantial evidence.  There is no reasonable basis in the record for finding that OARC failed to cooperate simply because it disagreed with Defendant-Intervenors' interpretation of OARC's reporting methodology.  This is true even where Commerce ultimately claimed, for the first time in the *Final Results*, that the agency agreed with Defendant-Intervenors' arguments regarding alleged deficiencies in OARC's reporting.

Pursuant to 19 U.S.C. § 1677e(b), if Commerce determines that a party has "failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available" to reach the applicable determination.  The "best of its

ability" standard has been interpreted as an assessment of "whether a respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation {or review}." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003); *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1275-76 (Fed. Cir. 2012). This assessment requires Commerce to make two determinations: (1) an objective determination "that a reasonable and responsible importer would have known the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations," and (2) a subjective determination that the "failure to fully respond is the result of a respondent's lack of cooperation in either: (a) failing to keep and maintain all requested records, or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its record." *Nippon Steel Corp.*, 337 F.3d at 1382-83.

Pursuant to this framework, "Commerce's use of an adverse inference cannot be based solely on a respondent's failure to submit requested information," but instead is appropriate only when there is "a demonstrated failure on behalf of the respondent to put forth its maximum efforts in attempting to provide Commerce with the requested data." *Shandong Huarong Mach. Co. v. United States*, 30 CIT 1269, 1280, 435 F. Supp. 2d 1261, 1272 (2006). The Federal Circuit has been clear that, while the "best of its ability" standard "does not condone inattentiveness, carelessness, or inadequate record keeping," it "does not require perfection." *NSK Ltd. v. United States*, 481 F.3d 1355, 1361 (Fed. Cir. 2007).

Here, Commerce did not undertake the requisite two-part analysis to find that an adverse inference was appropriate. Instead, here, Commerce essentially: (1) issued its initial questionnaire; (2) reviewed Defendant-Intervenors' early and repeated objections to OARC's reporting methodology; (3) analyzed OARC's basis for disagreeing with Defendant-Intervenors'

14

interpretation of Commerce's reporting requirements; and (4) declined to weigh in on this issue until the *Final Results* when it finally declared OARC uncooperative simply because it (belatedly) agreed with Defendant-Intervenors' arguments.

The statute plainly does not condone a finding that a respondent was uncooperative under such a "gotcha" approach to conducting administrative reviews. *Böwe-Passat v. United States*, 17 CIT 335, 343 (1993). Again, it is of no moment that OARC defended its initial reporting in the face of allegations by Defendant-Intervenors. It is important to emphasize that OARC did not ever state during the review that it would not comply with an additional request for information if Commerce sided with Defendant-Intervenors. It is true that OARC defended its reporting in its January 10 letter and elsewhere. However, it was incumbent on Commerce to "promptly" notify OARC of its agreement with Defendant-Intervenors and provide OARC with an opportunity to support its methodology with factual information or remedy the deficiency in the context of a questionnaire response. Indeed, as the Federal Circuit has held, Commerce "may not justify 'the absence of evidence by invoking procedural difficulties that were at least in part a creature of its own making.'" *Albemarle Corp. v. United States*, 821 F.3d 1345, 1358 (Fed. Cir. 2016) (quoting *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1295, 1378 (Fed. Cir. 2013)).

That is precisely what Commerce did here. In its IDM, Commerce failed to recognize that this issue was in dispute well before OARC's January 10 letter, as reflected in the passage below regarding OARC's expense reporting:

> If OARC acted to the best of its ability, it would have, at a minimum, notified Commerce of the allocation of freight expenses between sales in response to the initial questionnaire, which would have allowed Commerce to verify the accuracy of OARC's reporting. Rather, OARC impeded the proceeding in claiming that freight expenses were reported on a per unit basis (with the

15

exception of the single sample sale), which rendered the false impression that no further scrutiny was necessary in this regard. Thus, the revelation that certain movement expenses were, in fact, allocated (and freight revenues included in price, but not separately reported for an unspecified number of transactions) in the January 10 Submission effectively renders OARC nonresponsive with respect to its reporting of per unit freight. Accordingly, because OARC failed to cooperate to the best of its ability, for these final results we have applied adverse inferences pursuant to section 776(b) of the Act.

IDM at 7. Commerce cannot credibly feign ignorance of the issues regarding OARC's reporting

of movement expenses and freight revenue that were in dispute between OARC and Defendant-

Intervenors throughout the proceeding, as discussed in detail above. Commerce had ample time

to seek clarification of these issues but inexplicably declined to do so. Therefore, Commerce's

finding that OARC failed to cooperate to the best of its ability is not supported by substantial

evidence and otherwise contrary to law.

16

## VI.    CONCLUSION

For the foregoing reasons, Daikin respectfully requests that this Court hold the foregoing aspects of the *Final Results* to be unsupported by substantial evidence and otherwise not in accordance with law.  Daikin further requests that this Court remand the agency's determination with instructions to Commerce to correct its errors and to provide such other relief as this Court deems just and appropriate.

Respectfully submitted,

 /s/ Daniel R. Wilson
Daniel R. Wilson
Carrie Bethea Connolly
Richard P. Ferrin
Morgan Alexis Howard
FAEGRE DRINKER BIDDLE & REATH LLP
1501 K Street, NW
Washington, D.C. 20005
Daniel.Wilson@faegredrinker.com

*Counsel for Plaintiff-Intervenor*

Dated:  April 8, 2026

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief contains 4,738 words, exclusive of the title page, table of contents, table of authorities, counsel's signature block, and this certificate, and therefore complies with the maximum word count limitation of 14,000 words for primary briefs as set forth in Standard Chamber Procedures Rule 2(B)(1)(a) and in this Court's Order dated January 21, 2026.

/s/ *Daniel R. Wilson*
Daniel R. Wilson
Carrie Bethea Connolly
Richard P. Ferrin
Morgan Alexis Howard
**FAEGRE DRINKER BIDDLE & REATH LLP**
1500 K Street, N.W.
Washington, DC 20005
(202) 230-5211
*Counsel for Plaintiff-Intervenor*