**PUBLIC VERSION**

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| OMAN ALUMINIUM ROLLING COMPANY SPC, | : |
| Plaintiff, | : |
| and | : |
| DAIKIN COMFORT TECHNOLOGIES NORTH AMERICA, INC. | : |
| Plaintiff-Intervenor, | : |
| v. | : Court No. 25-00215 |
| UNITED STATES, | : **PUBLIC VERSION** |
| Defendant, | : Business proprietary information removed from page 3. |
| and | : |
| ALUMINUM ASSOCIATION TRADE ENFORCEMENT WORKING GROUP et al., | : |
| Defendant-Intervenors. | : |

## PLAINTIFF-INTERVENOR'S REPLY IN SUPPORT OF ITS RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel R. Wilson
Carrie Bethea Connolly
Richard P. Ferrin
Morgan Alexis Howard
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC 20005
daniel.wilson@faegredrinker.com

*Counsel for Plaintiff-Intervenor Daikin Comfort Technologies North America, Inc.*

**PUBLIC VERSION**

**TABLE OF CONTENTS**

I. DEFENDANT IS WRONG IN ASSERTING THAT IT DID NOT NEED TO GIVE OARC PROMPT, SPECIFIC NOTICE TO CURE ANY PERCEIVED DEFICIENCIES IN ITS REPORTING. ...........................................................................1

II. DEFENDANT MISINTERPRETS THE STATUTE'S REQUIREMENT TO PROVIDE AN OPPORTUNITY TO CURE IF "PRACTICABLE." ............................3

    A. "Practicable" Means "Feasible." ..............................................................................3

    B. Defendant Provides No Basis for Commerce's Assertion That It Was Not "Practicable" for Commerce to Issue a Questionnaire to OARC Following Its January 10 Submission. .............................................................................................5

    C. The Statements of Commerce (and Petitioners) During the Administrative Proceeding Implicitly Concede that Commerce Could Have Issued a Supplemental Questionnaire After the January 10 Filing by OARC. ................6

III. COMMERCE'S PAST PRACTICE DOES NOT INDICATE THAT THE RECORD IS IRREVOCABLY "CLOSED" OR THAT COMMERCE CANNOT ISSUE SUPPLEMENTAL QUESTIONNAIRES AFTER THE PRELIMINARY RESULTS. ....................................................................................................................................8

IV. COMMERCE'S FAILURE TO PROVIDE EVIDENCE DEMONSTRATING THAT THERE WAS INSUFFICIENT TIME TO ISSUE A SUPPLEMENTAL QUESTIONNAIRE REQUIRES THIS COURT TO REMAND COMMERCE'S FINAL RESULTS. .................................................................................................................10

V. CONCLUSION. ..................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Ashton v. Pierce*, 541 F. Supp. 635 (D.D.C. 1982) ................................................................ 5

*Baroque Timber Indus. (Zhongshan) Co. v. United States*
   No. 24-00106, 2026 WL 110435 (Ct. Int'l Trade Apr. 7, 2026) ........................................ 2, 3

*BlueScope Steel Ltd. v. United States*, 548 F. Supp. 3d 1351 (Ct. Int'l Trade 2021) .................... 11

*Brown v. Board of Educ. of Topeka*, 978 F.2d 585 (10th Cir. 1992) ..................................... 5

*Hyundai Steel Co. v. United States*, 518 F. Supp. 3d 1309 (Ct. Int'l Trade 2021) .......................... 2

*Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd. v. United States*, No.
   24-00262, 2026 WL 2199473 (Ct. Int'l Trade July 29, 2026) ..................................... 10

**Statute**

19 U.S.C. § 1677m(d) ........................................................................................... *passim*

**Regulation**

19 U.S.C. § 351.301(a) ........................................................................................ 8

**Administrative Determinations**

*Common Alloy Aluminum Sheet from Taiwan*, 91 Fed, Reg, 29499 (Dep't of Com.
   Apr. 16, 2026) (final admin. review) and accompanying Issues and Decision
   Memo (Apr. 13, 2026) ...................................................................................... 9

*Finished Carbon Steel Flanges from India*, 91 Fed. Reg. 34605 (June 8, 2026)
   (final admin. review) and accompanying Issues and Decision Memorandum
   (June 2, 2026) ............................................................................................... 9

*Polyethylene Terephthalate Film, Sheet, and Strip from India*, 91 Fed. Reg. 42939
   (Dep't of Com. July 13, 2026) (final admin. review) and accompanying Issues
   and Decision Memorandum (July 7, 2026) ........................................................... 9

*Raw Honey from Argentina*, 91 Fed. Reg. 35670 (Dep't of Com. June 12, 2026)
   (final admin. review) and accompanying Issues and Decision Memorandum
   (June 8, 2026) ............................................................................................ 8, 9

*Wood Mouldings and Millwork Products from the People's Republic of China*, 91
   Fed, Reg, 8823 (Dep't of Com. Feb. 24, 2026) (final admin. review) and
   accompanying Issues and Decision Memo (Feb. 19, 2026) ...................................... 9

**Other Authorities**

*Practicable*, BLACK'S LAW DICTIONARY (12th ed. 2024)........................................................4

*Practicable*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE
ENGLISH LANGUAGE (Unabridged) (1993) ......................................................................4

iii

**PUBLIC VERSION**

On behalf of Plaintiff-Intervenor Daikin Comfort Technologies North America, Inc. ("Daikin"), we hereby submit the following Reply Brief.  Daikin agrees with and adopts herein by reference the arguments by OARC in its reply brief regarding its compliance with Commerce's instructions in the initial questionnaire and in response to supplemental questionnaires.  Daikin's Reply Brief rebuts erroneous statements of fact and law by Defendant and Defendant-Intervenors regarding the requirements of 19 U.S.C. § 1677m(d) and Defendant's unlawful application of adverse facts available ("AFA") in response to the alleged deficiencies in OARC's responses to the initial and supplemental questionnaires.  Daikin continues to believe that the legal and factual errors in Commerce's *Final Results* resulted in a significantly overstated and unduly punitive antidumping duty margin for Daikin's entries of subject merchandise produced and exported by OARC made during the period of review.  This Court should correct those errors by holding Commerce's final results to be unsupported by substantial evidence and remanding Commerce's determination accordingly.

I.     **DEFENDANT IS WRONG IN ASSERTING THAT IT DID NOT NEED TO GIVE OARC PROMPT, SPECIFIC NOTICE TO CURE ANY PERCEIVED DEFICIENCIES IN ITS REPORTING.**

Commerce is wrong as a matter of law in its assertion that it "did not need to give OARC specific notice to cure its deficient reporting."  Defendant's Response to Plaintiff's Rule 56.1 Motion for Judgment Upon the Agency Record (July 13, 2026) (hereinafter "Def. Brief"), at 18.  As OARC explained in its Rule 56.2 Brief, the initial questionnaire only instructed OARC to report the unit cost of freight on a "unit" basis and requested OARC to "describe how you derived the freight cost per unit" only if "it is not possible to specifically identify the cost of each shipment."  Plaintiff's Memorandum in Support of Its Rule 56.2 Motion for Judgment on the Agency Record (Apr. 8, 2026) (hereinafter "OARC Brief"), at 19.  In response, OARC

**PUBLIC VERSION**

explained that it had no freight allocation calculation methodology to explain, under the terms of

Commerce's original questionnaire.  *Id*. at 18-21.

Further, with respect to freight revenue, Commerce's own longstanding practice is to find

that "freight revenue" exists (and is reportable) only when the record contains evidence that the

service was negotiated between seller and buyer and that that revenues do not exceed the

expenses."  *Id*. at 25 (cleaned up).  Yet Commerce raised the issue of alleged failure to report

"freight revenue" for the first time in the Final Results.  *Id*. at 24.

It appears that Defendant is suggesting that OARC somehow had to do more in its initial

questionnaire response.  But to the extent that Commerce expected something more in OARC's

initial response to the broadly drawn question in the initial questionnaire, it was incumbent on

Commerce to request additional information in a supplemental questionnaire response.  As this

Court has previously explained, "'{b}roadly drawn initial or supplemental questionnaires may

not sufficiently place a respondent on notice of the nature of the deficiency, and deprive it of the

opportunity to remedy that deficiency.'"  *Baroque Timber Indus. (Zhongshan) Co. v. United

States*, No. 24-00106, 2026 WL 1104375, at *16 (Ct. Int'l Trade Apr. 7, 2026) (quoting *Hyundai

Steel Co. v. United States*, 518 F. Supp. 3d 1309, 1321, 3122 (Ct. Int'l Trade 2021).

19 U.S.C. § 1677m(d) requires Commerce not only to inform the respondent that the

initial response is deficient and additional information is required, but also requires that such

notification to the respondent of the deficiency be "prompt."  *See* 19 U.S.C. § 1677m(d) ("the

administering authority … shall promptly inform the person submitting the response the nature

of the deficiency ….")  In this case, the first inkling Commerce gave that freight revenue was an

issue was in its April 23, 2025 Memo to the File, in which Commerce stated that it was accepting

OARC's January 10 Submission.  Memo to the File from Alex Cipolla, re: Administrative

**PUBLIC VERSION**

Review of the Antidumping Duty Order on Certain Aluminum Foil from the Sultanate of Oman: Accepting Untimely New Factual Information on the Record and Resumption of Briefing Schedule (Apr. 23, 2025), P.R. 104.  This was despite the fact that the defendant-intervenors alleged on January 7, 2025—more than three and a half months earlier—that OARC had collected [

            ].  Administrative Review of Certain Aluminum Foil from Oman—Request for Extension of Briefing Schedule and Supplemental Questionnaire (Jan. 7, 2025), C.R. 74.

Commerce's "failure to identify the deficiency" in OARC's initial questionnaire response "and to identify what information could be provided to cure that deficiency" in a prompt manner denied OARC the "opportunity to remedy or explain the deficiency," as required under 19 U.S.C. § 1677m(d).  *Baroque Timber Indus.*, 2026 WL 1104375, at *17.

## II.    DEFENDANT MISINTERPRETS THE STATUTE'S REQUIREMENT TO PROVIDE AN OPPORTUNITY TO CURE IF "PRACTICABLE."

### A.    "Practicable" Means "Feasible."

The main thrust of Defendant's argument in its opening brief is that the statute requiring Commerce to afford respondents to cure perceived deficiencies is that the requirement is qualified by the phrase "to the extent practicable … in light of the time limits established for the completion of investigations or reviews."  Def. Brief, at 10 (quoting 19 U.S.C. § 1677m(d)).  Defendant makes no attempt to define what is "practicable" under the circumstances here, stating only that "the deficiencies did not come to light until very late in the proceeding when OARC first disclosed the use of allocation and averaging to Commerce after the record had closed and shortly before the case briefs were due."  *Id*.  According to Commerce, "{a}t this point it was not practicable to provide OARC with any more chances to cure the deficiency in its reporting."  *Id*.  Commerce concludes with the naked assertion that "{t}he circumstances in this case did not

3

**PUBLIC VERSION**

require issuance of a deficiency questionnaire at the eleventh hour with an opportunity to cure the deficiency before resorting to facts otherwise available." *Id*.

But Commerce's response here is pure *ipse dixit*. As noted above, 19 U.S.C. § 1677m(d) *requires* Commerce to issue an opportunity to cure, through a supplemental questionnaire or some equivalent means, as long as it is "practicable" to do so. "Practicable" means "feasible," under both dictionary definitions and caselaw.

*Black's Law* Dictionary defines "practicable" as follows:

> **1.** (Of a thing) reasonably capable of being accomplished; feasible in a particular situation < a practicable plan > **2.** Capable of being used; useable < practicable technology >.

*Practicable*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Webster's Third New International Dictionary (Unabridged) defines "practicable" as follows:

> **1:** possible to practice or perform: capable of being put into practice, done, or accomplished: FEASIBLE < a ~ method > < a ~ aim > **2a**: capable of being used: USABLE < a ~ weapon > **b** *of a theatrical property*: that may be used as real < a ~ door at the back of the stage >.

*Practicable*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (UNABRIDGED) (1993) (emphasis original).

The dictionary definition of "practicable" is consistent with caselaw interpreting the term in a general context:

> The dictionary definition of "practicable" is "possible to practice or perform" or "capable of being put into practice, dine, or accomplished." Webster's Third New International Dictionary (1963). A synonym for practicable is "possible." *Id*. The courts have consistently interpreted the term "practicable" as requiring far more than a mere balancing of conveniences.

**PUBLIC VERSION**

*Ashton v. Pierce*, 541 F. Supp. 635, 641 (D.D.C. 1982) (collecting cases and applying definition

to analysis of housing statute); *see also Brown v. Board of Educ. of Topeka*, 978 F.2d 585, 489

n.4 (10th Cir. 1992) (quoting definition of "feasible" in *Webster's Third New International*

*Dictionary* (1981)).

    **B.**    **Defendant Provides No Basis for Commerce's Assertion That It Was Not "Practicable" for Commerce to Issue a Questionnaire to OARC Following Its January 10 Submission.**

Defendant does not provide anything close to substantial evidence to demonstrate that it

was not "practicable" (*i.e.*, "feasible") for Commerce to issue a supplemental questionnaire to

OARC following the January 10 Submission.  Def. Brief, at 10 (citing Letter from OARC to

Sec'y Raimondo, re: Certain Aluminum Foil from Oman: Response to Petitioners' Request for

Extension of Briefing Schedule and Supplemental Questionnaire and the Department's

Suspension of Briefing Schedule (Jan. 10, 2025), P.R. 98) ("OARC's Jan. 10 Submission").

First, Commerce only provides a naked assertion that it was not "practicable" for it to

issue a supplemental questionnaire, characterizing it as being "at the eleventh hour," "after the

Preliminary Results had been issued just before case briefs were due."  Def. Brief, at 19.

Nowhere—either in the underlying proceeding or even in its opening brief to this Court—does

Defendant estimate how much time it would have taken Commerce to issue a supplemental

questionnaire, get a response, analyze the response, and issue follow-up questions, if necessary.

Second, Commerce does not attempt to explain why there was insufficient time to issue a

supplemental questionnaire in light of its own decision to extend the briefing schedule and final

results after it had issued the preliminary results.  Although Defendant notes that case briefs in

the administrative proceeding were originally due on January 13, 2026, Def. Brief at 6,

Commerce could have--*and in fact did*—suspend the original briefing schedule.  *Id*. at 7.

Commerce later reset the deadline for case briefs by more than 3 ½ months, until April 30, 2025.

*See id*. at 8 (noting that the petitioners and OARC filed timely case briefs on April 30, 2025).

Commerce extended the deadline for the final results of the administrative review by 90 days,

until September 8, 2025. *See* Administrative Review of the Antidumping Duty Order on Certain

Aluminum Foil from the Sultanate of Oman: Extension of Deadline for the Final Results of

Antidumping Duty Administrative Review (June 30, 2025), P.R. 110 (extending deadline for

final results from July 8, 2025 to September 8, 2025). Commerce subsequently issued a "post-

preliminary analysis" memorandum on July 18, 2025, in which it addressed the issue at hand.

*See* Def. Brief, at 8. In sum, Commerce postponed its final results until September 8, 2025,

nearly *eight months* after Commerce claims that it was first put on notice regarding the

"allocation" issue (*i.e.*, January 10, 2025). Commerce simply does not provide substantial

evidence to support its claim that it was somehow "impracticable" to solicit additional

information from OARC pursuant to 19 U.S.C. § 1677m(d) within this time period.

**C.     The Statements of Commerce (and Petitioners) During the Administrative
Proceeding Implicitly Concede that Commerce Could Have Issued a
Supplemental Questionnaire After the January 10 Filing by OARC.**

The position of Defendant (and Defendant-Intervenor) that it was somehow impracticable

for Commerce to issue a supplemental questionnaire to OARC following OARC's January 10

Submission is remarkably disingenuous given their own statements in the administrative

proceeding. First, on January 7, 2025, the petitioners submitted comments requesting Commerce

to postpone the briefing schedule in light of alleged deficiencies in OARC's cost and sales

reporting, *and to issue a supplemental questionnaire to OARC*. Administrative Review of

Certain Aluminum Foil from Oman—Request for Extension of Briefing Schedule and

Supplemental Questionnaire (Jan. 7, 2025), P.R. 96. Specifically, petitioners requested the

following:

6

> Petitioners have raised significant issues not addressed in the
> Department's preliminary results for which the Department may
> find it needs further information from OARC to reach final results
> supported by substantial evidence.  Given the Department's recent
> decisions to toll preliminary and final results in this and all
> ongoing proceedings, Petitioners respectfully request that the
> Department delay briefing and issue a supplemental questionnaire
> to OARC to obtain for the record certain additional information
> necessary to reach an accurate result in this review.

*Id*. at 2.  It is simply implausible for Defendant-Intervenors to take the position that on January 7, 2025 that there was ample time for Commerce to issue a supplemental questionnaire to OARC on freight calculation issues pursuant to 19 U.S.C. § 1677m(d), but then defend Commerce's position when, after OARC voluntarily elaborated further on its freight calculations *three days later* (*i.e.*, in Oman's January 10 Submission), that it was too late in the proceeding for Commerce to issue a supplemental questionnaire.

Commerce itself also performed an astonishing reversal.  On January 10, 2025—*the same day* that OARC submitted additional calculations elaborating on its freight reporting— Commerce issued its Suspension of Briefing Schedule Memorandum, stating as follows:

> In consideration of the tolling of deadlines and comments received,
> we are hereby suspending the briefing schedule *to evaluate the
> record and comments submitted to determine whether to issue a
> further supplemental questionnaire.*  We will notify parties of the
> revised deadlines at a later date.

Memo to The File from Alex Cippola, re: Administrative Review of the Antidumping Duty Order on Certain Aluminum Foil from the Sultanate of Oman: Suspension of Briefing Schedule (Jan. 10, 2025), P.R. 97 (emphasis added).  Obviously, Commerce did not think at the time that it was somehow "impracticable" or otherwise out of step with its past practice to issue a supplemental questionnaire to OARC after the preliminary results.

It is irrelevant that OARC objected to the defendant-intervenors' request for Commerce to issue a supplemental questionnaire, *see* OARC's Jan. 10 Submission.  P.R. 98.  Although

7

**PUBLIC VERSION**

OARC believed that information already on the record was sufficient to demonstrate how OARC derived its freight calculations, the point is that to the extent that *Commerce believed* that the freight calculations were still unclear after OARC's January 10 Submission, Commerce easily could have issued a supplemental questionnaire to clarify the issue, as required by 19 U.S.C. § 1677m(d).

## III. COMMERCE'S PAST PRACTICE DOES NOT INDICATE THAT THE RECORD IS IRREVOCABLY "CLOSED" OR THAT COMMERCE CANNOT ISSUE SUPPLEMENTAL QUESTIONNAIRES AFTER THE PRELIMINARY RESULTS.

In its response brief, Defendant repeatedly refers to the record as having been "closed" following issuance of the Preliminary Results.  Def. Brief, at 9, 10, 12, 18, 19, 21, 22.  As such, Defendant implies (although it does not—and cannot—directly claim) that Commerce's procedures forbid Commerce from issuing supplemental questionnaires to add facts to the administrative record after the Preliminary Results.

First, Commerce's regulations make clear that it can request a respondent *at amy time during the proceeding* to submit additional factual information.  *See* 19 U.S.C. § 351.301(a) ("{n}otwithstanding paragraph (b) of this section, the Secretary may request any person to submit factual information *at any time during a proceeding or provide additional opportunities to submit factual information*").

Moreover, Commerce *frequently* issues supplemental questionnaires to respondents after issuing preliminary results.  To illustrate the point, here are five examples *in 2026 alone* where Commerce issued supplemental questionnaires after issuing the preliminary results of various administrative reviews:

- *Raw Honey from Argentina*, 91 Fed. Reg. 35670 (Dep't of Com. June 12, 2026) (final admin. review) and accompanying Issues and Decision Memorandum (June 8, 2026), at 4 (noting at least three post-preliminary questionnaires); *id*. at 9 (noting issuance of supplemental questionnaire on March 30, 2026 even though preliminary results had been published on October 3, 2025); *id*. at 10 (noting

8

**PUBLIC VERSION**

respondent on April 20, 2026 submitted revised cost database with alternative reporting methodology).

- *Polyethylene Terephthalate Film, Sheet, and Strip from India*, 91 Fed. Reg. 42939 (Dep't of Com. July 13, 2026) (final admin. review) and accompanying Issues and Decision Memorandum (July 7, 2026), at 2 (noting Commerce issued supplemental questionnaire after preliminary results).

- *Finished Carbon Steel Flanges from India*, 91 Fed. Reg. 34605 (June 8, 2026) (final admin. review) and accompanying Issues and Decision Memorandum (June 2, 2026), at 2 (noting Commerce issued supplemental questionnaire after preliminary results).

- *Common Alloy Aluminum Sheet from Taiwan*, 91 Fed, Reg, 29499 (Dep't of Com. Apr. 16, 2026) (final admin. review) and accompanying Issues and Decision Memo (Apr. 13, 2026), at 2 (noting Commerce published preliminary results on August 11, 2025, suspended briefing schedule, issued post-preliminary questionnaire to respondent on September 30, 2025, with response submitted on October 27, 2025).

- *Wood Mouldings and Millwork Products from the People's Republic of China*, 91 Fed, Reg, 8823 (Dep't of Com. Feb. 24, 2026) (final admin. review) and accompanying Issues and Decision Memo (Feb. 19, 2026), at 43 (noting Commerce issued supplemental questionnaire after preliminary results).

In fact, in some of these administrative reviews, the information solicited in the post-preliminary supplemental questionnaires appears to have been much more extensive than what Commerce would have likely requested from OARC in this proceeding. For example, as noted above in *Raw Honey from Argentina*, Commerce issued three separate supplemental questionnaires to at least one respondent, including a revised cost database. *Raw Honey from Argentina*, 91 Fed. Reg. 35670 (Dep't of Com. June 12, 2026) (final admin. review) and accompanying Issues and Decision Memorandum (June 8, 2026), at 4. At least one of those questionnaires was issued *five months* after the preliminary results were published. *See id.*

Thus, it is clear that there is no *per se* regulation or practice that would have barred Commerce from issuing a supplemental questionnaire to OARC to clarify the freight reporting issue, in order to satisfy the requirements of 19 U.S.C. § 1677m(d).

**IV.    COMMERCE'S FAILURE TO PROVIDE EVIDENCE DEMONSTRATING THAT THERE WAS INSUFFICIENT TIME TO ISSUE A SUPPLEMENTAL QUESTIONNAIRE REQUIRES THIS COURT TO REMAND COMMERCE'S FINAL RESULTS.**

As shown above, Commerce failed to follow the requirements of 19 U.S.C. § 1677m(d) by refusing to issue a supplemental questionnaire to clarify any concerns it might have had about OARC's freight "allocation" and freight revenue reporting, in light of OARC's January 10 Submission. Instead of citing that submission as factual information needing further clarification, Commerce accepted OARC's January 10 Submission only as a "gotcha" move to show somehow that OARC's freight "allocation" and freight revenue reporting was deficient.

In one of its most recent opinions, this Court held that Commerce abuses its discretion when it sees a suspected discrepancy in factual information provided by a respondent and refuses to give the respondent an opportunity to explain or correct the response. "Commerce has discretion to accept or reject corrective information on a case-by case basis." *Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd. v. United States*, No. 24-00262, 2026 WL 2199473, at *13 (Ct. Int'l Trade July 29, 2026). "Commerce can abuse this discretion by refusing to accept updated data when there is plenty of time for Commerce to verify or consider it." *Id*. "At the preliminary results stage, 'Commerce abuses its discretion where it refuses to let a respondent establish an accurate dumping margin by correcting mistakes in its response. Finality concerns only begin to counterbalance accuracy concerns when the administrative review reaches the final results stage." *Id*. Like the instant case, in *Ningxia Guanghua* Commerce refused to accept new correcting or clarifying information because the respondent "failed to alert Commerce to reporting errors until after Commerce had already issued the *Preliminary Results* and that, therefore, Commerce did not have the opportunity to ensure that the proposed change is appropriate, correct, or more accurate than the VAT amount originally reported." *Id*.

10

Like *Ninxia Guanghua*, in this case Commerce abused its discretion by refusing to issue a supplemental questionnaire to OARC once Commerce decided that OARC's freight "allocation" calculation and freight revenue methodology was unclear or unexplained. The only appropriate response, therefore, is for this Court to hold Commerce's final results unlawful and remand to instruct Commerce—at a minimum—to provide a detailed explanation of why it would not have been practicable to give OARC an opportunity to clarify or fix any alleged deficiencies in its response with respect to the freight-related field issues. *See BlueScope Steel Ltd. v. United States*, 548 F. Supp. 3d 1351, 1363 (Ct. Int'l Trade 2021) ("because Commerce provided no explanation as to why it would not have been practicable to give BlueScope notice of, and an opportunity to fix, the deficiencies identified in its responses, the court remands so that the Department can comply with the requirements of § 1677m(d)").

## V.    CONCLUSION.

For the reasons articulated above, as well as for the additional reasons discussed in OARC's reply brief, this Court should hold Commerce's *Final Results* to be unsupported by substantial evidence and/or otherwise not in accordance with law. The Court should accordingly remand the determination to Commerce to either accept OARC's reporting or to reopen the record to offer OARC an opportunity to clarify any concerns about the accuracy of OARC's calculations for these fields.

Respectfully submitted,

/s/ Daniel R. Wilson
Daniel R. Wilson
Carrie Bethea Connolly
Richard P. Ferrin
Morgan Alexis Howard
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Washington, DC 20005
*Counsel for Plaintiff-Intervenor*

11

**CERTIFICATE OF COMPLIANCE**

I, Daniel R. Wilson, an attorney with Faegre Drinker Biddle & Reath LLP, certify that Plaintiff-Intervenor's Reply in Support of Its Rule 56.2 Motion for Judgment on the Agency Record contains 3,373 words (according to the word count feature of Microsoft Word) and therefore complies with the word count limitation set forth in Paragraph 2(B)(1)(a) of the Standard Chambers Procedures of the Court.

/s/ Daniel R. Wilson
Daniel R. Wilson

*Counsel to Plaintiff-Intervenor Daikin Comfort Technologies North America, Inc.*

August 10, 2026